UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EPW, LLC | ) | CASE NO. 18-31460-hcd |
|         Debtor. | ) | Chapter 11 |

## MOTION PURSUANT TO 11 U.S.C. § 363 TO SELL PROPERTY OF DEBTOR-IN-POSSESSION

Comes now the Debtor-in-Possession, ("DIP"), by Counsel, pursuant to 11 U.S.C. §§ 105 and 363, and Bankruptcy Rule 6004, and requests entry of an Order authorizing the DIP to sell substantially all of the property of the DIP free and clear of all liens, encumbrances, claims and interests, to the Prevailing Bidder (defined below), at auction, on the following grounds:

### I. JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C.§§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The applicable statutes and rules governing this Motion are 11 U.S.C. §§ 105 and 363 and Bankruptcy Rule 6004.

### II. BACKGROUND

4. On August 10, 2018, EPW, LLC, (the "Debtor-in-Possession" or "DIP"), filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

5. DIP operates a leased facility in Elkhart, Indiana, with machinery and equipment that it owns, subject to a security interest granted to its primary lender, Chemical Bank and a leasehold interest in certain computer software to Complete Capital Services.

6. Chemical Bank is owed not more than $567,162.49 as of the Petition Date pursuant to several promissory notes. Chemical holds a first priority security interest in substantially all of the DIP's assets, excepting certain computer software leased from Complete Capital Services.

7. Complete Capital Services is owed $4,522.05 as of the Petition Date pursuant to a lease for computer software.

8. After arms-length negotiations, the DIP has entered into an asset purchase agreement (APA) with VMW Tooling Group, LLC, a copy of which is attached hereto as Exhibit "1." DIP and VMW have agreed that VMW's proposal will serve as a stalking horse bid for the auction sale DIP asks in this Motion to be authorized to conduct.

9. The DIP has agreed to sell its operations, including all assets listed in its schedule of Assets and Liabilities filed with the Court, for not less than $575,000 (or such higher amount as may be offered at the auction sale).

10. The attached APA is between the DIP and VMW Tool Group, LLC. VMW has agreed to act as a stalking horse bidder for the auction that the DIP seeks authority to conduct.

11. VMW has tendered earnest money in the sum of Fifty-Seven Thousand Five Hundred Dollars ($57,500), which sum is being held in the trust account of DIP's counsel. The APA calls from a break-up fee of Thirty Thousand Dollars in the event VMW is not the successful bidder. The break-up fee is reasonable and necessary to reimburse VMW for its attorney fees and due diligence costs incurred as stalking horse bidder.

### III. THE PERSONAL PROPERTY TO BE SOLD

12. Pursuant to the APA attached, the DIP is to sell all of its machinery, equipment, materials, inventory, work-in-process, accounts receivable, customer deposits and all other property, tangible and intangible to the successful bidder at auction.

13. There is an itemized list of equipment attached to DIP's Schedule B filed with the Court of August 10, 2018. The Sale is to include all of the DIP's business assets and pending orders, work-in-process, materials and inventory. The intended sale is substantially all of the DIP's assets.

14. The property does not include any personally identifiable information, and as such, there are no measures that need to be taken to comply with § 363(b)(1) of the Bankruptcy Code.

15. The personal property of the DIP is subject to liens held by Chemical Bank. The DIP has concluded that the liens of Chemical are legally enforceable, fully secured, first-priority liens. The claim of Chemical Bank is fully secured and will be satisfied from the sale proceeds.

16. Complete Capital Services is the lessor of certain computer software utilized by the DIP. The rights to the software are among the assets DIP seeks to sell in the APA and proposed auction. The claim of Complete Capital Services is fully secured and will be satisfied from the sale proceeds.

### IV. BID PROCEDURES AND SALE PROCESS

17. In the event the DIP receives a bid from a Qualified Bidder in addition to the bid of VMW, an auction will be conducted at the offices of Hammerschmidt, Amaral & Jonas,

137 N. Michigan St., South Bend, IN, 46601, on October 5, 2018, at 11:30 a.m. (Prevailing Easter Time). Bids are required to be submitted by 5:00 p.m. (Prevailing Eastern Time) on October 1, 2018, (The "Bid Deadline"). All bids must be submitted in accordance with the Bid Procedures attached as Exhibit 2.

18. In order to be eligible to participate at the auction sale of the Property, (the "Auction"), each bidder must be determined, in the discretion of the DIP, to be a qualifying bidder (a "Qualified Bidder"). In order to be considered a Qualified Bidder, a bidder must deliver to counsel for the Debtor-in-Possession, so as to be received before the Bid Deadline, a written offer that:

    (a) Consists of an executed form of the Purchase Agreement that may not deviate substantially from the terms of the Purchase Agreement, marked to show any proposed revisions (such bidder's executed purchase agreement, the "Bidder PA"). The Purchase Agreement is attached as Exhibit 3;

    (b) Contains a specific dollar amount in excess of Six Hundred Five Thousand Dollars ($605,000.00) for purchase of the Property;

    (c) Contains no contingencies to the validity, effectiveness, and/or binding nature of the bid, including without limitation, contingencies for due diligence and inspection or financing of any kind;

    (d) Demonstrated to the satisfaction of the DIP that the bidder has the legal capacity to complete the transaction in its proposing;

    (e) Includes a statement from the bidder that: (1) it is prepared to enter into the transactions contemplated in the Bidder PA immediately upon the conclusion

of the Auction; and (2) the Qualifying Bid shall be irrevocable upon submission.

19. Contemporaneous with submission of the bid, such bidder shall tender an initial earnest deposit of Fifty-Seven Thousand Five Hundred Dollars ($57,500.00) (the "Qualifying Bidder Deposit"). A Qualifying Bidder Deposit will be held by Counsel for the DIP and will be refunded only if the bid corresponding to the Qualifying Bidder Deposit is rejected.

20. All Qualifying Bids shall be irrevocable upon submission.

21. VMW Tool Group, LLC, as the Stalking horse bidder for the Auction, is already a Qualifying Bidder.

## V. SUMMARY OF THE AUCTION PROCESS

22. In the event the DIP receives more than one qualifying bid in accordance with the Bid Procedures, DIP's counsel will conduct the Auction for the sale of the Property at the offices of Hammerschmidt, Amaral & Jonas, 137 N. Michigan St., South Bend, IN 46601, on October 5, 2018, at 11:30 a.m. (prevailing Eastern Time). Unless otherwise ordered or directed by the Court, only representatives of the DIP, U.S. Trustee, Official Committee of Unsecured Creditors, and any Qualifying Bidders (and the professional for each of the foregoing) shall be entitled to attend the Auction.

23. The Auction will be subject to the following procedures:

   (a) In order for a qualifying bid to be considered and in order for a Qualified Bidder to further bid at the Auction, Qualifying Bidders must appear in person at the Auction or through a duly authorized representative, unless alternative

   arrangements are agreed upon in advance by the DIP after consultation with the Office of the U.S. Trustee;

   (b) Only Qualifying Bidders shall be entitled to make subsequent bids at the Auction;

   (c) Bidding will commence with the announcement of the highest or best qualifying bid received prior to the commencement of the Auction, which shall be determined by the DIP in its business judgment after consultation with the Office of the U.S. Trustee. Any successive bids must be submitted in minimum increments, which will be determined by the DIP at the beginning of the Auction. The DIP may, if it is in the best interest of the bankruptcy estate, change the minimum bid increments during the course of the Auction;

   (d) If more than one qualifying bid is received by the DIP, each Qualifying Bidder shall have the right to improve its respective bid at the Auction.

   (e) Each successive bid by any Qualifying Bidder at the Auction must contain a cast purchase price (U.S. Dollars only) that exceed the then existing highest bid;

   (f) At the commencement of the Auction, the DIP may announce procedural and related rules governing the Auction.

24. The Auction shall continue until no Qualifying Bidder is prepared to submit a further bid, at which time the DIP shall determine in its business judgment, after consultation with the Office of the U.S. Trustee, the highest and/or best Qualifying Bid (such bid is hereinafter referred to as the "Prevailing Bid," and such bidder referred to as the

"Prevailing Bidder"). The Prevailing Bidder shall be required to submit an additional earnest deposit within three (3) business days after the Auction, in an amount when added to the Qualifying Bidder Deposit, shall be equal ten percent (10%) of the total purchase price for the Property. The Qualifying Bidder that submits the second highest and/or best bid for the property, as determined by the DIP in its business judgment after consultation with the Office of the U.S. Trustee, may be deemed as a backup bid (such bid is hereinafter referred to as the "Backup Bid," and such failure of the Prevailing Bidder to timely consummate its purchase of the Property, the DIP shall be empowered to close the sale with the Backup Bidder pursuant to the Backup Bid, without further order of the Court. Within five (5) business days of notice from the DIP of the Prevailing Bidder's failure to timely consummate its purchase of the Property, the Backup Bidder shall be required to submit an additional earnest money deposit in an amount when added to the Qualifying Bidder Deposit shall equal then percent (10%) of the total purchase price under the Backup Bid.

25. The Prevailing Bid shall be irrevocable. The Backup Bid shall be irrevocable for a period of thirty (30) days after conclusion of the Auction. The Qualifying Bidder Deposit associated with the Backup Bid shall be refunded on the earlier of the closing of the sale of the Property to the Prevailing Bidder or thirty (30) days after the conclusion of the Auction.

26. Unless determined by the DIP to be the Prevailing Bid or the Backup Bid, all other Qualifying Bids and all other successive bids at the Auction shall de deemed rejected at

the conclusion of the Auction and the Qualifying Bidder Deposit for such rejected bids shall be returned to the respective bidders.

## VI. THE PURCHASE AGREEMENT

27. The Purchase Agreement provides for the sale of the Property free and clear of all liens, encumbrances, claims and interests.

## VII. RELIEF REQUESTED

28. The DIP requests entry of an Order, pursuant to §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, as follows:

   (a) Authorizing the Debtor-in-Possession to sell the Property of Auction pursuant to the terms and conditions of the Bid Procedures;

   (b) Directing the Sale of the Property free and clear of all liens, encumbrances, claims and interests attaching to the Sale proceeds in the same Order, priority and validity that presently exists, subject to all claims of the DIP;

   (c) Directing the sale of the Property be "AS IS, WHERE IS, WITH ALL FAULTS;"

   (d) Authorizing the DIP to execute any documentation necessary to effectuate the sale of the Property and the related purchase agreements;

   (e) Finding that §363 of the Bankruptcy Code has been satisfied; and

   (f) Authorizing the DIP to disburse the sale proceeds to satisfy the allowed secured claims of Chemical Bank and Complete Capital Services; and

   (g) Directing the DIP to deposit any remaining sums into its Operating account pending further order of the Court.

## VIII. **NOTICE**

29. The DIP will serve a copy of this Motion, along with attached Exhibits 1, 2, and 3 on the following: (a) the Office of the U.S. Trustee; (b) Chemical Bank and Complete Capital Services, the Secured Creditors; and (c) those parties who have requested notice pursuant to Bankruptcy Rule 2002. In addition, the DIP will provide separate notice of the Motion, objection deadline, and the hearing date in the event of an objection to the parties listed above and to all other creditors and parties in interest.

WHEREFORE, the DIP respectfully requests entry of Orders granting the relief requested herein as well as all other just and proper relief in the premises.

Respectfully submitted,

R. William Jonas, Jr. (#5025-71)
*Attorney for Debtor*
Hammerschmidt, Amaral & Jonas
137 N. Michigan St.
South Bend, IN 46601

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and accurate copy of the above and foregoing document was served upon the following parties on this day the 28th of August 2018 by first class U.S. mail, postage, or by notice of electronic filing by authorized e-mail, as follows:

By ECF noticing to:

| Nancy J. Gargula<br>United States Trustee<br>100 East Wayne Street, 5th Floor<br>South Bend, IN 46601-2349<br>USTPRegion10.SO.ECF@usdoj.gov | Ellen L. Triebold<br>Office of the United States Trustee<br>100 East Wayne Street, 5th Floor<br>South Bend, IN 46601-2349<br>Ellen.L.Triebold@usdoj.gov |
|---|---|

By regular mail to:

| Chemical Bank<br>333 East Main St<br>Midland, MI 48640-5178 | Complete Capital Services<br>PO BOX 790413<br>Saint Louis, MO 63179-0413 |
|---|---|
| Synchrony Bank<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk, VA 23541 | |

_____
R. William Jonas, Jr. (#5025-71)